UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTI AMERSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>G.W. WILLIAMS CO., et al.,<br><br>　　　　　Defendants. | Case No. 18-cv-00899-JSC<br><br>**ORDER GRANTING WOODMONT'S MOTION TO TRANSFER**<br><br>Re: Dkt. No. 11 |

Plaintiff Kristi Amerson alleges Defendants G.W. Williams Co. ("G.W.") and Woodmont Real Estate Services ("Woodmont") wrongfully evicted her after she made a reasonable accommodation request on behalf of her disabled son. (Dkt. No. 1.)[1] Now pending before the Court is Woodmont's motion to transfer for convenience. (Dkt. No. 11.)[2] After carefully considering the arguments and briefing submitted, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS Woodmont's motion for the reasons set forth below.

## COMPLAINT ALLEGATIONS

Ms. Amerson is the mother of Connor Rishel, a minor who uses a wheelchair for ambulation. (Dkt. No. 1 ¶ 2.) Defendant G.W. Williams Co. is the owner and operator of Folsom Gateway Apartments, a residential apartment complex located outside of Sacramento at 9237 Greenback Lane in Orangevale, California. (*Id*. ¶ 4.) The company is headquartered in San Mateo, California. (*Id*.) Defendant Woodmont Real Estate Services is in contract with G.W.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] All three parties have consented to the jurisdiction of a magistrate judge. (Dkt. Nos. 6, 16, 23.)

1    Williams Co. to perform the managerial responsibilities of Folsom Gateway Apartments.  (*Id*. ¶ 5.)
2    It is headquartered in Belmont, California.  (*Id*.)
3        Ms. Amerson and her son moved to Folsom Gateway Apartments in May 2016.  (*Id*. ¶ 11.)
4    She signed the lease without seeing the apartment because the apartment's website stated that the
5    premises were "wheelchair accessible."  (*Id*.)  Immediately upon moving in Ms. Amerson realized
6    there was no accessible parking nor any accessible path from the parking lot to the apartment.
7    (*Id*.)  Plaintiff had to carry her son to get him from the van into the apartment.  (*Id*.)
8        In June, July, and August 2016 Ms. Amerson made verbal requests to Mr. Geoffrey Sowul,
9    the manager of the building, for an accessible pathway.  (*Id*. ¶¶ 6, 12.)  Each time Mr. Sowul
10   brushed her off.  (*Id*. ¶ 12.)  In September 2016 Ms. Amerson made a written request and included
11   a letter from Conner's pediatrician in support of the application.  (*Id*. ¶ 13.)  Four days after
12   making the reasonable accommodation request Ms. Amerson received a three-day notice to quit on
13   account of her September 2016 rent not being paid.  (*Id*. ¶ 14.)  Ms. Amerson checked with her
14   bank which confirmed her rent check cleared.  (*Id*.)  Nevertheless Mr. Sowul insisted that she had
15   not paid.  (*Id*.)
16       The same conflict occurred the following month – Ms. Amerson paid her October 2016
17   rent yet Mr. Sowul insisted payment was never received.  (*Id*.)  Thereafter Defendants filed an
18   unlawful detainer action against Plaintiff.  (*Id*. ¶ 19.)  Ms. Amerson was evicted by the Sherriff's
19   office in December 2016 when the officers knocked on her door and changed the locks.  (*Id*. ¶ 22.)

## LEGAL STANDARD

21   "Under § 1404(a), the district court has discretion to adjudicate motions for transfer
22   according to an individualized, case-by-case consideration of convenience and fairness."  *Jones v.*
23   *GNC Franchising Inc.*, 211 F.3d 495, 498 (9th Cir. 2002) (internal quotations ommitted).  A court
24   may transfer an action to another district: (1) for the convenience of the parties; (2) for
25   the convenience of the witnesses; and (3) in the interest of justice.  28 U.S.C. § 1404(a).
26       "A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in
27   its determination whether transfer is appropriate in a particular case."  *Id*.  A district court may
28   consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the

United States District Court
Northern District of California

state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id*. "The burden is on the party seeking transfer to show that when these factors are applied, the balance of convenience clearly favors transfer." *Lax v. Toyota Motor Corporation*, 65 F.Supp.3d 772, 776 (N.D. Cal. Aug. 14, 2014) (citing *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 279 (9th Cir. 1979)). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Ctr. for Biological Diversity v. Kempthorne,* 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008) (citing *Stewart Org., Inc.,* 487 U.S. 22, 29 (1988); *Sparling v. Hoffman Constr. Co., Inc.,* 864 F.2d 635, 639 (9th Cir. 1988)).

## DISCUSSION

The central considerations in assessing Woodmont's motion to transfer are: (1) Plaintiff's choice of forum; (2) the convenience of the parties and witnesses; (3) the ease of access to the evidence; and (4) the interest of justice. The Court reviews each in turn.

### A.     Plaintiff's Choice of Forum

Plaintiff opposes Woodmont's Motion to Transfer on the grounds that there exists "a strong presumption in favor of the plaintiff's choice of forum." Dkt. No. 21 at 6:17-18 (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

While considerable consideration is generally given to a plaintiff's choice of forum, the degree of deference is substantially reduced in a few circumstances, including where: (1) "the plaintiff's venue choice is not its residence," and (2) the conduct giving rise to the claims occurred in a different forum. *See Fabus Corp. v. Asiana Exp. Corp.,* No. 00–3172, 2001 WL 253185, at *1 (N.D. Cal. Mar. 5, 2001); *see also, e.g., Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir.1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration.").

Both circumstances are present here. First, Plaintiff is a resident of Orangevale, California,

1   which is located in the Eastern District.  None of the persons identified in Plaintiff's complaint are
2   located in *this* district.  Second, Plaintiff leased the apartment in Orangevale, made the reasonable
3   accommodation requests to the housing manager in that city, and was evicted from her home in
4   Orangevale by the local Sherriff's office.  All of the events that gave rise to Plaintiff's complaints
5   arose in Orangevale.

6         Plaintiff responds that she filed in this district because Plaintiff's counsel is informed and
7   believes that the decision to deny the reasonable accommodation request was not made in
8   Sacramento but at the corporate headquarters in Belmont and/or San Mateo and that all of the
9   discussions "about Plaintiff's requests for reasonable accommodation, which required
10  reconfiguration of the parking lot and installation of a ramp, were made in San Mateo in the
11  Northern District."  (Dkt. No. 21 at 7.)  These "facts" are not alleged in the complaint or supported
12  by a declaration in opposition to the transfer motion and thus cannot be considered.  *See* N.D. Cal.
13  Civ. L.R. 7-5 ("Factual contentions made in support of or in opposition to any motion must be
14  supported by an affidavit or declaration and by appropriate references to the record").  Further, the
15  complaint alleges that Plaintiff made her request for an accommodation to management in the
16  Eastern District and that the Regional Manager (that is, in the Eastern District) granted the request.
17  (Dkt. No. 1 ¶¶ 13, 15.)  She also presented proof that she paid her rent to Woodmont's District
18  Manager, also in the Eastern District.  (*Id.* ¶ 14.)  All of the relevant events alleged in the
19  complaint or supported by declaration occurred in the Eastern District.

20        Accordingly, the Court finds that Plaintiff's chosen venue is entitled to only "minimal
21  consideration."  *See Lou v. Belzberg,* 834 F.2d at 739.

22      **B.**    **Convenience of the Parties and Witnesses**

23      "In assessing whether the convenience of the witnesses favors transfer, the Court must
24  consider both the location and number of witnesses each side has and the relative importance of
25  those witnesses." *Rubio v. Monsanto Company*, 181 F.Supp.3d 746, 763 (N.D. Cal. Mar. 24,
26  2016) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335 (9th Cir. 1984)).  "The Court
27  accords more weight to the inconvenience of non-party witnesses, as party witnesses can be
28  compelled to testify regardless of the forum in which the case is litigated." *Id*. (citing *STX, Inc.v.*

*Trik Stik Inc.*, 708 F.Supp. 1551, 1556 (N.D. Cal. Oct. 12, 1988) (discounting the inconvenience of witnesses who were employees of one of the parties because they could be compelled to testify)).

Woodmont represents that the three individuals Plaintiff identifies in her complaint, Geoffrey Sowul, Michelle Nowoy, and Vickie Materson work out of Woodmont's Sacramento office or the apartment complex. (Dkt. No. 11-1 ¶ 4.) Further the witnesses with knowledge regarding the incidents at issue are within the Eastern District, including the local Sherriff's office, Woodmont's staff members, contractors, and the child's doctor. (*Id*. ¶ 7.) Generally, litigation costs are reduced when venue is located near the most witnesses expected to testify, and "[t]he convenience of witnesses is often the most important factor in resolving a motion to transfer." *Bunker v. Union Pac. R.R. Co.,* No. 05–04059, 2006 WL 193856, *2 (N.D. Cal. Jan. 23, 2006) (citing *A.J. Industries, Inc. v. United States District Court,* 503 F.2d 384, 389 (9th Cir. 1974)).

Plaintiff argues that she believes there will be more Bay-Area based witnesses than Sacramento-based witnesses because (1) Woodmont's corporate representatives must testify about their fair housing policies, (2) the executives' testimony will be important to punitive damages, and (2) to Plaintiff's knowledge, all of G.W. Williams' employees are located in this district. Plaintiff does not specify, however, how many corporate witnesses she expects will testify or even who they are. *See Szegedy v. Keystone Food Products Inc.*, 2009 WL 2767683, at *4 (C.D. Cal. Aug. 26, 2009) (declining to consider the convenience of potential witnesses proffered by the plaintiffs where the plaintiffs did not identify these individuals or specify how they might provide important testimony). And again, her assertion is unsupported by allegations in the complaint or a declaration. Further, more weight must be afforded to the non-party witnesses in Sacramento, including the Sherriff's office and the child's doctor, rather than the corporate representatives in this district.

Last, Plaintiff argues that Plaintiff's costs will likely increase if the Court grants Woodmont's motion because Plaintiff's attorneys are located in Oakland. The location of counsel, however, is irrelevant to the section 1404(a) inquiry. *See, e.g., Atayde v. Napa State Hosp.*, No. 16-CV-00038-TEH, 2016 WL 1089248, at *3 (N.D. Cal. Mar. 21, 2016).

1    For these reasons, the convenience of the witnesses favors transfer to the Eastern District.

2    **C.      Ease of Access to Evidence**

3    Defendant Woodmont notes that the alleged retaliatory eviction proceeding was filed in Sacramento Superior Court and offers evidence that Plaintiff's resident file, lease agreement, and relevant correspondence are all located at the property and the Sacramento office. (Dkt. No. 11-1 ¶¶ 3, 5.) Plaintiff counters that she would not be surprised if the tenant files were not equally available at Woodmont's corporate offices and that other documents, such as Woodmont's policies and procedures are "more likely to be kept at corporate headquarters in this District." (Dkt. No. 21 at 10:10-15.) However, copies of the policies and procedures may also be stored at the Sacramento office, and even if they are not, it is likely that they can be easily transferred electronically. Further, Woodmont has represented that the documentary evidence for this case is largely maintained at its Sacramento office and Plaintiff does not contest this representation. *See Park v. Dole*, 946 F.Supp.2d 1088, 1095 (N.D. Cal. Aug. 2, 2013) ("Costs of litigation can still be substantially lessened if the venue is in the district in which most of the documentary evidence is stored.").

Accordingly, the Court finds that the ease of access to evidence favors transfer to the Eastern District.

**D.      Interests of Justice**

In evaluating the interests of justice, a court may consider "public interest factors such as court congestion, local interest in deciding local controversies, conflicts of laws, and burdening citizens in an unrelated forum with jury duty." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986) (citing *Piper Aircraft Co.,* 454 U.S. at 241 n. 6). The public interest favors transfer to the Eastern District. Given the suit arose at an apartment building in the Sacramento area and involves eviction of a mother and in her son in Sacramento pursuant to Sacramento legal process and law enforcement, local citizens from the Sacramento area will have more interest in deciding this disability accommodation and eviction dispute than the residents of the Northern District.

Plaintiff insists that Defendants have more properties in the Northern District and therefore

6

the Northern District has an interest in ensuring that its companies follow disability laws. True, but each defendant also has a significant presence in the Eastern District. Woodmont has a Regional Office in Sacramento and G.W.'s website, the same website upon which Plaintiff relies, shows that G.W. operates more residential properties in the Eastern District than the Northern District. Thus, both the Northern and Eastern Districts have an interest in this litigation.

Plaintiff also argues that the Eastern District is more congested than the Northern District and therefore transferring this case to that district would further burden the district. (Dkt. No. 21 at11.) However in the same breath Plaintiff admits that "[a]ll the United States trial courts are overburdened and underfunded." The same is true for this district. Furthermore, the location of Plaintiff, the third party witnesses, and the documentary evidence suggest that transfer would reduce the costs of litigation which serves not only the parties but also the public interest. *See Park*, 946 F.Supp.2d at 1096. The remaining public interest factors, such as a potential conflict of laws, are neutral. *See id*. (concluding the remaining factors were neutral because both the Central District and Northern District are "within the Ninth Circuit and the state of California, both districts share largely the same law and either district is equally capable of analyzing the relevant legal issues presented by this case").

## CONCLUSION

While Plaintiff's choice of this forum is entitled to minimal weight, that is the only factor that weighs against transfer. Because the convenience of the witnesses and location of the evidence strongly favor transfer to the Eastern District, and the interests of justice factor is neutral or weighs in favor of transfer, the Court finds that Woodmont has met its burden of showing that convenience clearly favors transfer to the Eastern District of California. Accordingly, Woodmont's motion is GRANTED. This Order disposes of Docket No. 11.

**IT IS SO ORDERED.**

Dated: May 1, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

7